1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHRISTOPHER SMITH,                          No.  2:24-cv-1192 DAD AC (PS)

12              Plaintiff,

13        v.                                      FINDINGS AND RECOMMENDATIONS

14   HOME DEPOT,

15              Defendant.

16

17        Plaintiff is proceeding in this matter pro se, and pre-trial proceedings are accordingly

18   referred to the undersigned pursuant to Local Rule 302(c)(21).  Defendant moves to dismiss the

19   Second Amended Complaint without leave to amend.  ECF No. 21.  Plaintiff opposes the motion.

20   ECF No. 22.  Defendant replied (ECF No. 23) and plaintiff submitted an unauthorized surreply

21   (ECF No. 24) which the court has considered in the interests of justice.  The parties appeared in

22   court for oral argument on February 5, 2025.  ECF No. 25.  For the reasons set forth below, the

23   undersigned recommends the motion to dismiss (ECF No. 21) be GRANTED in part and

24   DENIED in part.

25                                     **I.  Background**

26        This case was removed from Sacramento County Superior Court on April 24, 2024.  ECF

27   No. 1.  The initial complaint was entitled "Complaint for Damages for Libel," and alleged that

28   Home Depot had slandered plaintiff by calling him a pimp and a sugar daddy and telling

1

1  plaintiff's peers to watch him so that he wouldn't "rub off" on new coworkers.  ECF No. 1 at 13-

2  14.  The complaint also stated that this offensive conduct had created a hostile work environment

3  that that plaintiff had been suspended for a "false threat" of which he was later found to be

4  innocent.  Id.  Defendants moved to dismiss, ECF No. 5, and plaintiff responded by filing a First

5  Amended Complaint on May 21, 2024.  ECF No. 6.

6      The First Amended Complaint asserted claims under Title VII of the Civil Rights Act of

7  1964, 42 U.S.C. §§ 2000e to 2000e-17.  ECF No. 6 at 4.  On June 4, 2024, Home Depot moved to

8  dismiss the First Amended Complaint on grounds that it (1) was barred by the statute of

9  limitations, and (2) failed to state any facts to support a claim for relief.  ECF No. 10.  The motion

10  was granted on the latter ground, and plaintiff was granted leave to amend.  ECF Nos. 18, 20.

11  Plaintiff filed the operative Second Amended Complaint "SAC" on November 4, 2024.  ECF No.

12  19.

13  **II.  The Second Amended Complaint**

14      The Second Amended Complaint ("SAC") asserts claims of discrimination, retaliation,

15  and hostile work environment under Title VII.  ECF No. 19 at 2-4.  Plaintiff alleges he is African

16  American as well as a member of other minority groups.  ECF No. 19 at 2.  On August 22, 2022,

17  plaintiff was approached by co-worker Anthony Whitfield, a Caucasian male.  Id.  Whitfield told

18  plaintiff that Management Supervisor "Keith B.," who is also Caucasian, advised Whitfield and a

19  new co-worker "Oscar M." to watch plaintiff because he didn't want plaintiff to "rub off on the

20  new guy."  Plaintiff asked Whitfield and Oscar M. if Keith B. really said that, and both Whitfield

21  and Oscar M. stated that they did not approve of what Keith B. said about plaintiff.  Id.  Plaintiff

22  got a statement from Whitfield and/or Oscar M., brought it to Human Resources, and was told

23  that management would take care of the matter.  Id.

24      On September 4, 2022, plaintiff was approached by another co-worker, Sergio S., who

25  stated that Keith B. was in the break room talking to plaintiff's co-workers about him.  Id. at 3.

26  Sergio S. told plaintiff that if it happened again, he would record it because he was tired of

27  listening to Keith B. say things that weren't true.  Id.  On September 14, 2022, plaintiff was again

28  approached by Sergio S., who played for him a recording of Keith B. stating that plaintiff "looked

like a pimp" but was really a "sugar daddy" and that that he is tired of plaintiff and wants him out of the store.  Id.  Plaintiff could hear his co-workers laughing and saying, "that's an insult."  Id.

In October of 2022, after providing a recording and statement of events that occurred, plaintiff received a phone call on his day off from Home Depot corporate that he was suspended for threatening Keith B.'s life, and plaintiff could not return to work until the incident was investigated.  Id. at 4.  Plaintiff informed the caller that he "did or said no such thing" and that he was the victim in all of this, and that the report was made because he informed corporate of Keith B.'s prior actions.  After a period off work, plaintiff was called again by Home Depot corporate and was told he could return to work.  Id.  Keith B. admitted that he lied, that there was no merit to his claim, and that he retaliated against plaintiff because plaintiff had "brought to light what had happened."  Id.  Plaintiff declined Keith B.'s desire to apologize.  Id.  Plaintiff went back to work and eventually Keith B. stopped working at his job.  Id.

### III.  The Motion to Dismiss

Defendant moves to dismiss the SAC on grounds that (1) it is time-barred, and (2) it fails to state any facts to support a claim for relief.  ECF No. 21.

A.  Legal Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint."  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

To survive dismissal for failure to state a claim, a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of action.  Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35 (3d ed. 2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a

3

1  claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

2  Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual

3  content that allows the court to draw the reasonable inference that the defendant is liable for the

4  misconduct alleged." Id.

5        In reviewing a complaint under this standard, the court "must accept as true all of the

6  factual allegations contained in the complaint," construe those allegations in the light most

7  favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus,

8  551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954,

9  960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th

10  Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of

11  factual allegations, or allegations that contradict matters properly subject to judicial notice. See

12  Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State

13  Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

14        Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

15  Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may

16  only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support

17  of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir.

18  2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential

19  elements of the claim that were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d

20  266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992). A pro se

21  litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend,

22  unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809

23  F.2d 1446, 1448 (9th Cir. 1987).

24  B. Statute of Limitations

25        Defendant's cursory argument as to the untimeliness of the SAC (ECF No. 21 at 5-6)

26  repeats the theory of untimeliness that was raised and rejected on the previously adjudicated

27  motion to dismiss the FAC. Defendant has presented no basis for a different result on this

28  motion.

4

A Title VII plaintiff must timely file a charge of discrimination with the Equal Employment Opportunity Commission before bringing suit. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). By statute, a plaintiff has ninety days from his receipt of the EEOC's right-to-sue letter to file a Title VII claim. 42 U.S.C. § 2000e-5(f)(1). This ninety-day period operates as a statute of limitations. Scholar v. Pacific Bell, 963 F.2d 264, 266-67 (9th Cir. 1992). Therefore, if a plaintiff fails to file his Title VII civil action within the ninety-day period, his action is barred. Id. at 267. It is undisputed that plaintiff received a right to sue letter from the EEOC on November 16, 2023. ECF No. 6 at 8. Plaintiff filed his state court complaint on January 29, 2024 (ECF No. 1 at 13-21), within the 90-day window. He filed the First Amended Complaint, which first identified his claims as arising under Title VII, in this court on May 21, 2024 (ECF No. 6), after that window had closed. Defendant argued that the filing date of the FAC was determinative, because the Title VII claims did not relate back to the original "libel" complaint.

The undersigned declined to recommend dismissal on this basis, as it appeared that the Title VII claims arose out of the same "conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Rule 15(c)(1)(B), Fed. R. Civ. Proc. Although the original pro se complaint did not mention Title VII, it did present a series of factual allegations sounding in employment discrimination: name-calling and harassment rising to the level of a hostile work environment, retaliation for complaining to leadership, and improper suspension. The court could not definitively conclude that the FAC related back to this complaint, as the FAC expressly asserted causes of action under Title VII but entirely lacked supporting factual allegations. Accordingly, it was recommended that the FAC be dismissed for failure to state a claim and that plaintiff be permitted to amend. ECF No. 18.

The Second Amended Complaint sufficiently identifies the factual basis for plaintiff's putative Title VII claims, and confirms that they arise from the same conduct, transactions and occurrences referenced in the initial complaint. Both the initial complaint and the SAC are subject to the liberal construction afforded to pro se pleadings. See Nordstrom, 762 F.3d at 908. Both seek relief for workplace harassment in the form of specific disparaging speech (at least

5

1    some of which, as discussed below, involved racially-coded language), false accusations,

2    retaliation and wrongful suspension.  The same incidents are described in the original complaint

3    and the SAC.  Defendant makes no substantive argument on the relation-back issue, despite the

4    court's discussion in response to the previous motion.  Accordingly, defendant's timeliness theory

5    provides no basis for dismissal.

6         C.  Failure to State a Claim

7              1.  Discrimination

8              Title VII makes it unlawful for an employer to discriminate against any person with

9    respect to "compensation, terms, conditions, or privileges of employment, because of such

10   individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  To state a claim

11   for either racial or gender discrimination under Title VII, plaintiff must plead: (1) he is a member

12   of a protected class; (2) he was qualified for his position; (3) he experienced an adverse

13   employment action; and (4) similarly situated individuals outside his protected class were treated

14   more favorably, or other circumstances surrounding the adverse employment action give rise to

15   an inference of discrimination.  Fonseca v. Sysco Food Servs. of Arizona, Inc., 374 F.3d 840, 847

16   (9th Cir. 2004).

17             The SAC presents a clear set of facts: plaintiff alleges that he is a member of a protected

18   class (African American) and that he experienced an adverse employment action (suspension).[1]

19   However, the factual allegations do not support a plausible connection between plaintiff's

20   protected class status and the adverse employment action.  The complaint explicitly alleges, and

21   plaintiff confirmed at the hearing, that he was suspended because his employer was told that he

22   had threatened a co-worker's life.  Even though this allegation proved to be false, a reported

23   threat to the life of another employee is an entirely legitimate and race-neutral reason to

24   temporarily suspend a worker pending investigation.  The complaint contains no facts that would

25   indicate the actual motivation for suspension had anything to do with plaintiff's race.  Plaintiff's

26   allegations may support an inference of animus on the part of his alleged harasser—Keith B., who

27

28   [1]  That plaintiff was qualified for the position he held at the time of his suspension may be
     inferred.

6

1  made the unfounded threat accusation—but Keith B. did not make the suspension decision.

2  Plaintiff confirmed at hearing that the decision to suspend was made by someone at Home

3  Depot's corporate office in Atlanta.  There is no reason to think that such a person would have

4  had knowledge of Keith B.'s hostility toward plaintiff, let alone shared it.

5      Plaintiff was specifically asked at the hearing whether there exist additional facts that

6  might indicate the decision to suspend him was itself influenced by his race.  He could identify no

7  such facts.  While plaintiff appears to believe that Keith B.'s conduct was related to plaintiff's

8  race, and that Home Depot should have acted on plaintiff's complaints about Keith B. prior to the

9  false allegation of a threat and the ensuing suspension, there is no basis for an inference that the

10  decision to suspend was made with knowledge that the threat accusation was false and had been

11  motivated by racial animus.  Still less do the allegations support an inference that the actual

12  decisionmaker was influenced by such animus.  Accordingly, this claim fails.  Because it is clear

13  that no additional facts can be added which would supply the necessary nexus between plaintiff's

14  protected class status and the only adverse employment decision alleged in the complaint,

15  amendment would be futile.

16          2.  Hostile Work Environment

17      To establish a prime facie case for a hostile work environment under Title VII, a plaintiff

18  must plead: (1) he was subjected to verbal or physical conduct based on a protected class; (2) the

19  conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

20  conditions of his employment and create an abusive working environment.  Surrell v. Cal. Water

21  Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008).  Courts consider all of the circumstances in

22  determining whether these criteria are met, "including the frequency of the allegedly

23  discriminatory conduct, its severity, and whether it unreasonably interferes with an employee's

24  work performance."  Id.  In determining whether conduct was sufficiently severe to constitute a

25  Title VII claim, "[c]ontext matters.  Workplace conduct is to be viewed cumulatively and

26  contextually, rather than in isolation.  This approach makes common sense in order to screen out

27  one-off, isolated events and yet benchmark conduct in the context of a specific workplace."

28  Sharp v. S&S Activewear, L.L.C., 69 F.4th 974, 978 (9th Cir. 2023) (internal citations omitted).

7

1    "The question is whether the alleged offensive conduct was sufficiently severe *or* pervasive to

2    alter the conditions of employment." <u>Equal Emp. Opportunity Comm'n v. Tesla, Inc.</u>, 727 F.

3    Supp. 3d 875, 890 (N.D. Cal. 2024) (emphasis original).  "In evaluating the significance of the

4    statements in question, we consider the objective hostility of the workplace from the perspective

5    of the plaintiff."  <u>McGinest v. GTE Serv. Corp.</u>, 360 F.3d 1103, 1115 (9th Cir. 2004).

6    "[A]llegations of a racially hostile workplace must be assessed from the perspective of a

7    reasonable person belonging to the racial or ethnic group of the plaintiff."  <u>Id.</u>

8        Plaintiff's complaint identifies three instances in which plaintiff's supervisor, Keith B.,

9    made derogatory statements about him: (1) on August 22, 2022, co-worker Anthony Whitfield

10    told plaintiff that Keith advised a new co-worker to stay away from plaintiff because he did not

11    want plaintiff to "rub off" on the new worker; (2) on September 4, 2022, plaintiff was approached

12    by another co-worker, Sergio S., who stated that Keith B. was in the break room talking to

13    plaintiff's co-workers about him; and (3) on September 14, 2022, plaintiff was again approached

14    by Sergio S., who played for him a recording of Keith B. stating that plaintiff "looked like a

15    pimp" but was really a "sugar daddy."  ECF No. 19 at 2-3.  Although the remarks in question are

16    not expressly race-related, the Ninth Circuit has held that the use of "code words" with

17    underlying racial motivations can be enough to support a Title VII claim.  <u>McGinest,</u> 360 F.3d at

18    1117.  The reference to looking "like a pimp" invokes racist stereotypes and thus amounts to

19    racially coded language.

20        It is unclear whether the August 22 and September 4, 2022 comments can also be

21    construed as race related, due to the paucity of contextual details.  Without additional facts, it

22    cannot be determined whether the "pimp" reference was a "one off-isolated event," <u>see</u> <u>Sharp</u>, 69

23    F.4th at 978, or whether plaintiff was subjected to a hostile work environment based on his race.

24    The complaint itself indicates that that Keith made his false accusation against plaintiff in

25    retaliation for plaintiff's complaints about him (ECF No. 19 at 4), but it does not provide a clear

26    factual basis for a conclusion that the false accusation was motivated by plaintiff's race.  A single

27    previous reference to plaintiff as looking like a pimp is too slim a reed to support an inference

28    that Keith's false accusation and ongoing general antagonism were motivated by plaintiff's race.

For these reasons, the Second Amended complaint does not establish workplace harassment so severe or pervasive that it altered the conditions of plaintiff's employment. At the hearing on the motion, however, plaintiff indicated that additional incidents and circumstances, not alleged in the complaint, further reflect Keith's racial hostility. Plaintiff stated among other things that after his return to work following suspension, Keith continued to supervise him for a period of time and to treat him badly. The details of those interactions are necessary to a determination whether plaintiff was subjected to a hostile work environment. Accordingly, the undersigned recommends that this claim be dismissed with leave to amend.

3. Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must plead facts demonstrating: (1) he engaged in a protected activity under Title VII; (2) he suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002). The SAC does allege plaintiff engaged in a protected activity by filing a complaint about his supervisor's behavior. See, e.g., Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 65 (2d Cir. 1992) (holding an internal complaint to company management is protected under Title VII). Plaintiff also alleges an adverse employment action: suspension. Plaintiff has not, however, demonstrated causation as to defendant Home Depot.

As already discussed in relation to the discrimination claim, plaintiff expressly alleges that Home Depot suspended him not because of his race but because it received information that plaintiff had made a death threat to a colleague. The complaint alleges that Keith B.'s false accusation was made in retaliation for plaintiff's complaints about him (ECF No. 19 at 4), but Keith's conduct is not the adverse employment action at issue. Because Keith's false accusation was not an adverse action taken by Home Depot in relation to plaintiff's employment, it cannot support a retaliation claim against Home Depot. Keith's conduct is relevant to plaintiff's hostile environment claim for the reasons already explained, but it does not support a retaliation claim.

At oral argument, plaintiff confirmed that the decision to suspend him came from Home Depot's corporate office in Atlanta, and that the decision maker was likely unaware of the

1    complaints plaintiff made about Keith.  Because the facts as alleged demonstrate that Home

2    Depot suspended plaintiff to investigate a claim that plaintiff made a threat on his supervisor's

3    life, and not in response to any protected activity undertaken by plaintiff, this cause of action

4    cannot move forward.  Given the absences of additional proffered facts to indicate retaliatory

5    action by Home Depot, further amendment of this claim would be futile.

6                          **IV.    Pro Se Plaintiff's Summary**

7          The Magistrate Judge is recommending to the District Judge that the motion to dismiss be

8    granted, but that you be permitted to amend your Title VII hostile work environment claim one

9    more time.  If the District Judge adopts this recommendation, you should amend the claim to

10   include descriptions of each incident that reflects Keith B.'s mistreatment of you, any facts

11   showing that his animosity toward you was based on your race, and any facts showing how you

12   were affected.  You may include things that happened after your suspension was over and before

13   Keith B. left Home Depot.  Following these instructions will not guarantee that the claim will go

14   forward—an amended claim may or may not be sufficient—but the facts in the Second Amended

15   Complaint are not enough, and it may be that additional facts would fix the problem.

16         The Magistrate Judge concludes that your discrimination and retaliation claims cannot go

17   forward and could not be fixed by amendment.  Your complaint says that Home Depot suspended

18   you temporarily while it investigated a report that you had threatened the life of a colleague.

19   Even if Keith B.'s report was false and was racially motivated and/or retaliatory, that does not

20   make Home Depot's suspension decision racially motivated and/or retaliatory.  Home Depot can

21   be liable under Title VII for a hostile work environment created by its employees' actions, but it

22   can be liable for discrimination and retaliation only if its own conduct in suspending you was

23   motivated by an illegal consideration.  It is recommended that you not be given leave to amend

24   these claims.

25         If you wish to object to these recommendations, you may do so within 21 days.

26   ////

27   ////

28   ////

                                    10

1

**V.  Conclusion**

2          Accordingly, the undersigned recommends that defendant's motion to dismiss (ECF No.

3    21) be GRANTED, and that plaintiff be granted LEAVE TO AMEND as to his Title VII hostile

4    work environment claim only.

5          These findings and recommendations are submitted to the United States District Judge

6    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days

7    after being served with these findings and recommendations, any party may file written

8    objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

9    document should be captioned "Objections to Magistrate Judge's Findings and

10    Recommendations."  Failure to file objections within the specified time may waive the right to

11    appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez

12    v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

13    DATED: February 11, 2025

14

ALLISON CLAIRE
15    UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

11